We'll move to our second case this morning, A.B. v. Mike Braun. Ms. Lowery. Good morning, Your Honors. May it please the Court, my name is Marcia Lowery, and I am arguing today on behalf of appellants. This lawsuit is about the comedy and the balance between the federal court's obligation, unfailing obligation, to take on that for which it has jurisdiction and the respect and deference to the state court for its legitimate interest in avoiding interference in the management of its affairs. This is a case that was dismissed below on a motion to dismiss, and the district court decided, based largely on Ashley W., which was a case prior to this, and supported that decision by relying on more of these Sims, a Supreme Court decision, and two other cases in this circuit, Brunken and Milchstein. In Ashley W., the court said, we know that Younger applies to state-initiated child welfare litigation. Basically what this case is about is whether children in the foster care system in Indiana have a right to bring a federal court action, notwithstanding the fact that they have ongoing judicial proceedings to review what's happening to them while they're in the state foster care system. More of these Sims was a case about parents who sought to enjoin a state court process about the removal of their children. They did seek to get the process enjoined, and it went to the Supreme Court. The Supreme Court said abstention allows that the federal court should not have acted. There are basically no cases where in which children have been denied access to the federal courts for their ongoing proceedings. And what our position is, and we think it's correct, is that the decisions in both Sprint and New Orleans Public Service versus New Orleans, often referred to as NOPC, substantially limit the doctrine of jurisdiction. How do you address our opinion in Woodard? It's a recent case where we talked about federalism and comedy and abstained in a similar situation even when we said, look, Younger was not a perfect fit. We acknowledged it in Woodard that Younger was not a perfect fit, but yet we abstained. Your Honor, I think that the abstention doctrine is extremely limited, and I think that we have to go back to Sprint to see exactly how limited it is. Yeah, I understand that, but does that mean that Woodard is wrong and that we have to overturn it? I mean, I guess what are you asking us to do? I'm asking you to do two things. I'm asking you to limit Ashley W. to its facts. Okay, so let's say we do that. All right, and then, Your Honor, I'm asking you to remand this case back to the district. But what do we do with Woodard? Your Honor, I'm not familiar with that case. Okay. It's also, the full case name is J.B. v. Woodard. I think it's ubiquitous in this case, and so I'm sure you're familiar with it. It may not be familiar to you by the name Woodard, but it's J.B. v. Woodard. It features prominently here because it is also arising in the context of child neglect and abuse cases. All right, but the plaintiff, who is the plaintiff in that case? I mean, that's what really makes the difference, because Sprint says that abstention is limited to criminal proceedings, civil proceedings, quasi-criminal in nature, to sanction the federal plaintiffs for some wrongful act, and civil proceedings in furtherance of the court's ability. And so if Woodard, with which I say I'm not familiar, did not in fact fall into one of those categories, then the court should not have abstained. So J.B. v. Woodard also needs to be overruled. Well, Your Honor, I'm sure that somehow was a reasonable exercise of the court's decision, but what we're here about today is basically the decisions that have already been made in this case, which is having to do with Ashley W., which we think can be limited to its facts. This case does not in any way seek to interfere with any juvenile court decisions that it has made. So this is a case against the public agency that is responsible for the environment in which children find themselves. And plaintiffs are dependent upon, plaintiffs in this case who are foster children, are dependent on the public agency to create the environment in which they live. The ongoing proceedings, which are about every six months, have to do with basically what the child's circumstance is, what the family court, what the juvenile court does to provide the child's medical care, the child's treatment. Can I ask you another question? Sure. What about courthouse news services versus Brown? Can you address that case? I mean, in that case, let me just quote, we talk about abstention doctrines and we say they were not a perfect fit, meaning younger abstention was not a perfect fit. And we ultimately base our decision on the more general principles of federalism that underlie all of the abstention doctrines. Is courthouse news services wrong? No, it's not wrong, Your Honor, because in that case, the issue was whether or not some certain information would be made available more quickly to the people who sought it. Once again, what we're talking about, not exercising abstention in cases that do not fit within the limited descriptions in Sprint. Sprint narrowed the abstention doctrine. You know, Morvey soon... Sprint, yeah, I get that. Sprint dealt with younger abstention, though, and we have cases that talk about we still will abstain even if younger abstention is not a perfect fit. And I understand your argument regarding Ashley W. I understand that. I understand your argument regarding Sprint. But what do we do with courthouse news services? What do we do with Woodard? What do we do with SKS and Associates? And I recognize that some other circuits don't agree with the way we've handled abstention in the past. But do we need to change our law on abstention to rule in your favor? No, Your Honor. I think for the most part, with the exception of a couple of these cases where I think the court has gone a little bit further than it needs to, but it can be It's hard for me to imagine a fact scenario that is more focused on state interest than this case. I hear what you're saying that we can limit it on its facts, but boy, oh boy. I mean, you are digging right down into what is uniquely within the province of the states. We say that over and over and over again. When you're talking about, you're basically talking about child custody issues and the foster care system. That is uniquely within the state court system. I mean, one of the reliefs you seek is asking a United States federal court to require the state of Indiana to establish an entirely new state department. I can't think of something that would infringe more on purposes of federalism than that. I can't think of anything. Well, Your Honor, clearly there's a state interest here, but there's also a federal interest in what happens to children when they're in foster care. The children who come into foster care are children who are paid for by substantial amounts of federal money, and there is federal law that governs what's supposed to happen to them. In fact, state courts are equally equipped to adjudicate federal claims, and that's the The whole point of this doctrine of abstention, whether it falls in the basket of younger or some other form of abstention, as we explained in J.B. v. Woodard, S.K.S., Courthouse News Services v. Brown, Driftless. We've got countless decisions about this explaining that this is not a matter of checking boxes or fitting within baskets. It's all about federalism and comedy to the state courts, and so when the state courts can vindicate the federal interest and it's a core state policy area and legal area, as this one is in the domain of domestic relations, child abuse, and neglect, then abstention is warranted. Right. Your Honor, abstention is a doctrine that is about withholding jurisdiction that exists, and when we deal with some of the softer areas, there have been different abstention doctrines. There's Burford doctrines, there's Colorado River, but when we get to more of what we're talking about is, number one, the separation of parent and child. Abstention applies there, and then what we're also talking about is the ongoing proceedings that are carried out by the state court, and for those ongoing proceedings, the children are in the custody of the Department of Social Services, and their conduct depends on what happens to them depends on what the Department of Social Services, not the courts, what the Department of Social Services makes available to the courts. What does the court get to choose from? What if a child needs a different kind of placement? Can the court place the child any place? No. They can only place the child in what's available, and that is an area where abstention should not be exercised. That is an area that courts elsewhere have upheld the jurisdiction for, and in fact, a recent case that came out, I think, about a week and a half after Ashley W., Jonathan R. and the Fourth Circuit found that for those children who are in the custody of the state, basically this is about the conditions of confinement, and there are federal claims that can be brought in federal court because of the conditions of confinement, and if the child welfare system operates the way we assert it does operate in Indiana, and that's in our complaint, then the federal court has a right to intervene, and that is different, and that is an area where abstention should not apply, and elsewhere in other circuits where abstention does not, in fact, apply, and that is what we're talking about here when we talk about whether there should be abstention. Yes, it's an area of state concern. Of course it is, but it is also an area of federal concern that constitutional rights and federal statutes should not be violated if a system operates in such a way that the children who are in it have such limited options and the courts can only provide the children with the options that are available to it because the courts don't create foster parents. The courts don't, in fact, decide how many cases a worker can have. Courts do not decide whether a child is being placed in a foster home where the child gets beaten up, and as you can see from our complaint, the situations of the plaintiffs that we represent has been very, very troubling in terms of what's happened to them. Basically this is like a prison system where the prisoners do not have to wait until they try suicide, as some of the children we represent have, before the conditions that they can't get medical treatment are addressed. They have a right, a federal right, to have their conditions of confinement addressed. So here we're talking about the conditions of confinement for the children in the system whose parent-child relationship issue has been resolved. That's when they come into the system, and when the state court says, okay, you are a chintz. Your parent committed acts of abuse or whatever it was, and so the parent-child relationship is a protected relationship, and the child becomes a chintz, but then what happens to the child? This is about conditions of confinement in the foster care system, and what we're asserting in this case is that the conditions of confinement are very real and the children have a right to challenge those conditions of confinement in a federal lawsuit. That's what this case is about, and so when you get to something like courthouse news where some of the issues get a little squishy, it's not a legal term, where things get a little bit softer, there are other rules, but here we are not seeking to interfere with any judgments that the state courts make. We are not seeking to interfere with the operations of the state court. I think my time is up. It is. Okay. Thank you, Your Honor. I reserve three minutes for rebuttal. Actually, you've already used all your time, but I will give you some additional time after Mr. Barta has his chance. May it please the Court. One of the state's most vital functions is protecting abused and neglected children from harm, and every day the Department seeks to do just that through chintz proceedings that were seen by state courts. Even plaintiffs admit that these proceedings are the type of quasi-criminal proceeding to which Younger applies, at least from their initiation through the dispositional decree, and at no point do the proceedings transmute into something else. Every semiannual review after the dispositional decree is there to give effect to the objectives of the dispositional decree. From start to finish, these proceedings are about protecting children in harm's way. So the critical question for both Younger and standing purposes is whether a federal judge could lawfully grant any relief to the two children with ongoing cases that a state court judge could not. And the answer is no. State courts can adhere to federal claims and can use their authority to address any concrete problem that a child actually faces, whether that's a need for different services or a different placement. And federal courts limited by Article III aren't any better equipped to address plaintiffs' more abstract concerns about making the system better as a whole. Let me ask you about a case that's come up through our court, through Illinois, not Indiana. And one of the amicus briefs raises this. They give examples where advocates have sought reform of state child welfare agencies in federal court. And one of the examples, of course, is BH v. McDonald, which is an Illinois case that's currently still in federal court in this very building and has been up to our court on appeal. And that case, if I'm following your argument, that case should not even exist in federal court because abstention should have barred it from existing. So I'm asking why is the federal court equipped in BH v. McDonald, which is challenging the Illinois Department of Children and Family Services and the provision of care and how care is provided to children in the foster care system there, why was the federal court there equipped to respond to the systemic issues about food, shelter, clothing, and health care in that case, but not when it came up through our court? What are the differences? You see it. So setting aside that not every state agency chooses to contest cases on younger, I think one of the critical things is particulars matter a lot when we're dealing with younger because, of course, one of the considerations under younger is do you actually have an adequate forum in state court? And so if a state limits the authority of their judges overseeing the case that would otherwise be subject to younger goes into federal court. Well, let me ask you a broader question, though, because one of the things I hear Judge Kirsch asking and Chief Judge Sykes asking is there are broader issues of comedy and federalism that one ought to consider here. Apply that to the BH v. McDonald example. Why wouldn't of those broader issues of federalism and comedy have not made it so our circuit did not say that case should not be in federal court and when it came to the Seventh Circuit we didn't dismiss it? So with the caveat, I don't remember offhand whether this court addressed younger specifically in that case, but... What I'm saying is you have to take it out of younger. The panel is asking non-younger abstention questions. Well, I think even if you set younger aside, certainly the federalism and comedy very much limit what types of relief a federal court can lawfully impose. And that's exactly the point the Supreme Court made in NOPC when describing how younger is really rooted in the idea that when it comes to equitable remedies, there are principles outside just whether courts have jurisdiction that limit what relief can be granted. And so I think when we're dealing with these types of cases and there's requests to essentially create a court-administered substitute child welfare agency, that is not something that whether you label it under younger or Article III. But I'm still curious about your answer because that seems to be precisely what's happening in BHP McDonald. There's a consent decree in operation right now for years about reforms to the Illinois Child Welfare Agency. How could that be? I think that, Your Honor, just goes to show that some states just simply find it more expedient to enter into consent decrees rather than engage with the principles of federalism and the constraints imposed by Article III that inform these types of cases. There's often an incentive to do so because it pries loose money from the state legislature if a federal court is breathing down your neck. That can certainly be the case, Your Honor. And I think that is why, in some sense, there's really no distinction between this case and Ashley W. The only remedy that it seems like would actually make the system better would be more money, which is something the plaintiffs are requesting. And just in Ashley W, we have children involved in ongoing CHINS cases. Even after the dispositional decree, we have requests for systematic relief. And we have even some identical requests for relief, such as relief related to numbers of caseloads. So can you also help me to understand the CHINS proceedings a little better?  Can a CHINS court order DCS to make some of the changes, the system-wide changes, that plaintiffs are asking for here? What are the CHINS court's constraints in that area, if at all? CHINS courts can enter relief. I think the phrase is, control the conduct of any person in relation to the child in front of them. So that would certainly involve telling the department, you need to find a particular type of specialized therapist, which they have done. I was asking about their systemic requests for release. It's clear. You all have made it very clear and helped us to understand. They can order relief for the child in front of them, the child's particular case. I'm asking about the larger systemic requests plaintiffs have. Well, I think oftentimes those can have larger systemic impacts. For example, if the request is to provide a particular specialized type of therapist that the department doesn't have under contract, then the department is going to have to go out, find that therapist, put them under contract so they can provide that service. And that's exactly the situation that a federal judge would be in. Because at this point, we don't have a certified class action. All we have are individual cases. And even certification of a class doesn't create greater substantive rights than an individual plaintiff would otherwise have. It's just a procedural device to collect it. And so in that respect, I don't think federal judges are any better equipped to address the difficult problems that accompany children in these tough situations than state courts that live with this day in and day out. And so I think that sort of also feeds into not just the younger issues but also the standing. Because if you... And I think if we look at pages 19 and 20 of the plaintiff's reply, the harms there are really abstract risks, not concrete harms, precisely because state courts can deal with those. And so whether we look at this under younger or standing, I think there's just a jurisdictional problem. If... I was wondering if you did want to address Woodward. It doesn't appear that either party cited J.B. versus Woodward in their briefs. So you did not either. Did you want to address it now? Happy to talk about it, Your Honor. So I think even apart from sort of younger, there is a larger domestic relations exception to federal jurisdiction that I think certainly covers Woodward and just reflects the broader principle that I think the Supreme Court has recognized is that when it comes to domestic relations, whether we're talking about divorce proceedings or child removal proceedings, these are simply not the types of disputes in which federal courts should be handling. If there are any further questions, I'd be happy to address them. Otherwise, I'd be happy to cede the remaining time to the court. Thank you. Ms. Lowery, you used all your time, but I'll give you a couple of minutes in rebuttal if you've got anything further to say. I'll be very brief, Your Honor, and thank you for that. Basically, the principle is that if there's not a specific exception that the situation falls into, the court must exercise jurisdiction. And there is no exception that these ongoing proceedings fall into. On a practical level, however, and I also wanted to address Your Honor's question, there is no way that these children are going to get any relief in the individual proceedings. Maybe an individual child will get a better placement, but there was an amicus brief that was submitted in support of our position which says you cannot get this relief in the state courts in which practitioners in Indiana submitted the brief. But it is clear that when a child... that if there's no system that is adequate for the child, the system is over here. We're not seeking to interfere with the proceedings of the state juvenile court proceedings. But if there's no system that provides what the child needs, the state court, all committed individuals, I'm sure, cannot give it to the child. There needs to be a better system, and the stories that we describe of our plaintiffs in this complaint are very dire. The only way they are going to get remedied and are getting remedies that will be useful to them is if the federal court can take jurisdiction of this case. And as I say, if there is no specific... Obtention's an exception category. The federal court is supposed to take jurisdiction unless, and there's no unless here, for the ongoing proceedings, and other systems have not abstained, and that's why some of these systems are better than Indiana's. I appreciate the court's indulgence in allowing me to talk further. Thank you very much. Thank you very much. Our thanks to all counsel. The case is taken under advisement. Thank you.